KITTREDGE and wife vs. NEUMANN and wife and others.

The owner of mortgaged premises, subject to a purchase money mortgage given by her, and containing an agreement on the part of the mortgagee to release portions of the mortgaged premises upon the delivery to her of a new mortgage or mortgages on the released portions, for such sums as might, in her opinion, be fairly proportioned to the whole sum; such new mortgage or mortgages to be the first lien or liens upon the premises so to be released; executed, on the 1st day of April, 1873, a conveyance of portion of the mortgaged premises.   On the same day, the purchaser executed three mortgages on the parcel so conveyed, to secure part of the purchase money.   These mortgages contained a statement "given to secure the payment of a portion of the purchase money." The papers were all left in the hands of the attorney, to be delivered or exchanged, and recorded as soon as a release could be procured from the original mortgagee of the premises so conveyed.   A final arrangement for release was made on the 9th or 10th of July.   On the 11th of July, one of the three mortgages aforesaid was assigned to the original mortgagee; this mortgage was intended to be the first lien on the premises, in accordance with the agreement aforesaid; and on the 12th of the same month, a release of the premises so sold, executed on the 5th of the preceding month of May, and left with the same attorney to be held until further instructions, was directed to be delivered.   The papers were all put on record at the same time.   Between the 1st of April and the 12th of July, the purchaser erected a stable on the lot so released.   The vendor (a married woman) saw this building in process of erection, but gave no consent thereto, nor did she file any dissent.   The original mortgagee knew nothing of it.   Held—

1. That lien claims for materials and labor in the construction of the stable, were prior to the lien of the mortgage assigned to the original mortgagee.

2. That the mortgage assigned to the original mortgagee was given to secure purchase money, gives it no priority over the lien claims; the liens had attached, and were encumbrances on the land when the purchaser took title, and her mortgage for purchase money was subject to them.

3. The vendor having filed no notice of dissent, as provided by the ninth section of the mechanics' lien law, her mortgages are also subject to the mechanics' liens; that they were given for purchase money, cannot avail her.

---

Mrs. Kittredge was the owner of a tract of land of twelve acres, subject to a purchase money mortgage for $25,000, which was held by Mrs. Howe, the former owner. This mortgage contained an agreement on the part of the mortgagee, to release portions of the mortgaged premises upon the delivery to her of a new mortgage or mortgages on the released portions, for such sums as might, in her opinion, be fairly proportioned to the whole sum; such new mortgage or mortgages to be the first lien or liens upon the premises so to be released. In March, 1873, Mrs. Kittredge and her husband agreed with Mrs. Neumann, in writing, to sell and convey to her a lot of two acres, part of the twelve acres, with a cottage thereon. The price was to be $14,000. Of this, $500 were paid in cash, on the execution of the agreement; $3000 were required to be paid in cash, on the 1st of April, 1873, and $10,500 were to be secured by mortgage on the premises. The papers were to be exchanged, and possession of the property to be given, on the 1st of April. On that day, Mrs. Neumann was not ready with the cash payment of $3000, and proposed to give a note for it at one month, secured by mortgage; and Mrs. Kittredge had been unable to make any satisfactory arrangement with Mrs. Howe for the release. Mr. and Mrs. Kittredge, and Mr. and Mrs. Neumann met at the office of Mr. J. L. Blake, where the papers were to be exchanged, and executed and acknowledged the following papers: a deed for the property from Kittredge and wife to Mrs. Neumann; a bond and mortgage for $5000, from Neumann and wife to Mrs. Kittredge; a bond and mortgage for $5500, from Neumann and wife to Mrs. Kittredge, and a note and mortgage for $3000, from Neumann and wife to

Mrs. Kittredge. All of these papers bear date on the 1st of April, 1873, which was also the time when they were acknowledged. The mortgages were all on the property sold by Mr. and Mrs. Kittredge to Mrs. Neumann. The mortgages contain the statement that they were "given to secure the payment of a portion of the purchase money" for the premises. The parties then agreed to leave all the papers in the hands of Mr. Blake, to be delivered or exchanged, and to be recorded by him, as soon as Mrs. Kittredge should be able to procure the release from Mrs. Howe.

On the 5th of May, 1873, Howe and wife executed and acknowledged a release for the premises, and left it with Mr. Blake, to be held by him until they should give him further instructions. Kittredge and wife were unable to make a satisfactory arrangement with Mrs. Howe earlier than the 9th or 10th of July, 1873. On the 11th of July, in pursuance of this arrangement, Mr. and Mrs. Kittredge executed and acknowledged an assignment to Mr. Howe of the $5000 bond and mortgage, and left it with Mr. Blake, with instructions to deliver it whenever he might be authorized to use the release. This mortgage was intended to be the first lien on the premises, in accordance with the terms of the agreement contained in the Kittredge mortgage held by Mrs. Howe. On the afternoon of the same 11th of July, Mr. Blake notified Mr. Howe, by letter, that the $5000 mortgage had been so assigned, and that the payment thereof had been guaranteed. On the 12th of July, Mr. Howe instructed Mr. Blake to deliver the release; and on the same day, Mr. Blake exchanged or delivered all the papers, putting the deed, mortgage, release and assignment, on record. The exchange and record were simultaneous, and the mortgages were recorded in the order above stated. Between the 1st of April and the 12th of July, Harrison and Gifford, and Paul H. Lutz, respectively, furnished certain materials for, and performed certain labor in the erection of a stable on the premises in question, for and at the request of Mr. Neumann. Both Mr. and Mrs. Kittredge saw this building while it was in process of erec-

tion, but gave no consent thereto, and did not file any dissent. Neither Mr. nor Mrs. Howe knew anything about it. Nor did Mr. Blake, until subsequently to the exchange and recording of the papers. On the 19th of May, 1874, Harrison and Gifford filed their claim of mechanics' lien against the building and land, and the estate of Mrs. Neumann therein, as the owner in fee simple. Suit was brought against Mr. Neumann, as builder, and Mrs. Neumann, as the owner, and judgment was recovered July 3d, 1874, for $701.55 damages, besides costs. On the 21st of May, 1874, Paul H. Lutz filed a similar claim of mechanics' lien, and judgment was recovered thereon, August 27th, 1874, for $598.08 damages, besides costs.

On final hearing, on pleadings and proofs.

*Mr. John L. Blake,* for complainants.

*Mr. John W. Taylor* and *Mr. C. L. C. Gifford,* for the lien claimants.

THE CHANCELLOR.

The question presented is, whether the lien of the builder of the stable is prior to that of the mortgages of Mrs. Kittredge and Mrs. Howe. As for Mrs. Howe, her release is conclusive against her. After the stable had been built, she released the premises from the lien and operation of the mortgage. According to the terms of her mortgage, she could not have been required to release, unless, in her opinion, the new mortgage for the part which she was called upon to release, should be fairly proportioned to the whole amount of her encumbrance, nor unless the new mortgage was a first encumbrance. She, then, had the means of protecting herself against the lien claims. When she released the premises, and so enabled Mrs. Kittredge to convey to Mrs. Neumann, the stable had been built. She has no equity in the premises, as against the lien claimants.

It is urged, however, that the mortgage taken by her by assignment from Mrs. Kittredge, was given to secure purchase money, and it is contended that it should therefore have priority over the lien claims. But, though given for purchase money, it was given to Mrs. Kittredge on the sale by her to Mrs. Neumann, and at the time of the sale, the liens had attached to the land in the hands of Mrs. Kittredge; so that she conveyed it to Mrs. Neumann, subject to them. They were encumbrances on the land at the time Mrs. Neumann took her title, and her mortgage for part of the purchase money was subject to them.

As to Mrs. Kittredge, she gave possession of the premises to Mrs. Neumann, in April, 1873, before the deed from her to the latter was delivered; she knew that the stable was being built, for she saw it, daily, while in the course of construction. She of course knew, also, that Mrs. Neumann had no legal title to the land. She might have protected herself against the claims of the builders, by filing her dissent. She did not see fit to do so. The ninth section of the mechanics' lien law (*Revision*) provides, that any married woman upon whose lands any building shall be erected or repaired, or whereon any fixtures shall be put, shall be taken as consenting to the same, and such building or buildings, and curtilage whereon the same are erected, shall be subject to the lien created by that act; provided always, that in case any married woman shall cause to be filed in the clerk's office of the county wherein such building or buildings are located, a notice, in writing, describing the property, and that she does not consent to the erection or repairing of such building or buildings on her lands, and that the same is being done against her wishes and consent; then, in such case, the building or buildings and the curtilage whereon the same are erected, of any married woman, shall be free from the lien given by that act, from the time she shall have filed a notice as aforesaid. Mrs. Kittredge, by filing the notice provided for in the act, might have protected herself against the lien. The work was commenced and carried to

its completion in her sight. The person who caused the building to be erected, was not a stranger, but was in possession under her. She has no equity to protect her against the lien claims, and the statute gives them priority over her mortgage. That her mortgage was given on account of purchase money, cannot avail her, for the reasons above suggested in connection with the mortgage held by Mrs. Howe by assignment.